THE defendent, in art action on the case against the plaintiff fir slander, commenced in Hanover county court, to the declaration in which the plea was not guilty,-had recovered 150 pounds damages. '
Tie county court granted an injunction to stay execution of the judgement until further order, upon a bill filed by the present plaintiff, stating that the trial of the issue had been brought unexpectedly and as he conceived irregularly, arid when lor that reason he was not prepared to make a defence, that not only the damages were excessive, if the words alleged to be defamatory had not been true, but, that the truth of them would have been proved, if the plaintiff had not been surprised by a premature trial, and that some of the jurors, who were disposed to condemn the plaintiff in trifling if in any damages, being convinced by the reasoning of their more experienced, and as they believed at that time more knowing, brethren, who affirmed that the less number were bound by law to acknowledge their agreement in a verdict, however discordant with their own sentiments, which the greater number had approved, concurod in the sentence, of which the plaintiff complaineth, and to which they would not otherwise have assented.
The defendent by answer denied the trial to have been brought on irregularly'; and neither admitting nor denying the allegation relative to the influence of some jurors over others, objected that the examination of them, in order to prove their own misconduct, would be a mischievous practice.
No irregularity in b inging on the trial of the issue was made to appear.
Several witnesses were examined to prove, on one side, the truth, and, on the other, the falsehood, of the words aliedged to be defamatory.
As to the influence of some jurors over others, one juror de *134 posed, that, from the evidence, he was of the opinion no damages ought to have been found against the plaintiff, but being unacquainted with the law concerning juries, he was imposed upon by some of his brethren,-who told him that all the jurors must acknowledge their agreement in any verdict, in which a majority were agreed; and under this imposition he did acknowledge his agreement in the verdicc then found ; whereas had he known that his own conscience ought to be satisfied in the propriety of the verdict, he would not have consented to a -verdict for any damages against the plaintiff.
Another juror deposed to the same purpose with respect to himself, and. indeed m t íe same words, adding, that he desired the foreman, whilst he was writing the verdict, to consider him the deponentes dissenting from it.
A third juror deposed to the same purpose as the first, adding that he desired the foreman to write that the majority but not the whole were for a verdict in favour of the plaintiff.
And a fourth juror also deposed to the same purpose as the first.
Not one of them, when the verdict was returned, and the usual question c have you agreed in a verdict? ’ was propounded, signified his dissent.
Four other jurors, who were examined, acknowledging the diversity of opinions among them, at first, insomuch that some would have found 500 pounds damages, others less damages, and others no damages at all, do not admit, or believe any means to have been practised by any of the jury for the purpose of misleading others, and state their own opinions respectively to be, that, after some time, the majority appearing inclined to find 150 pounds, ail of them agreed to the verdict returned for those damages.
The county court decreed another trial of the issue, between the parties.
From this decree the defendent appealed to the high court of chancery, who, the 28 day of October, 1791, delivered this
OPINION:
That, if the damages, found on trial of the issue in the action at common law, had been excessive, the application to obtain redress, for that cause, to the court of equity, in the first instance, was improper, unless, for some reason not apparent in this case, a motion to the court before which that trial was, to award another trial, either could not have been made, or if made *135 must have been unsuccessfull; (a) and that no other good cause for awarding the new trial'in this case appeareth, the surprise upon the appellee (plaintiff) not being proven ; the truth of the slanderous words spoken by him of the other parly being a proper subject of inquiry, upon a motion, which ought to have been made instead of a bill in equity, for awarding a new trial; and that some of the jurors should at length join in ■a verdict which they do not approve, prevailed upon by then-fellows to do so, being in most cases unavoidable, and perhaps generally those verdicts being the most just, which are the result of discussion introduced by diversity of sentiments profess>ed by different jurors on their first consultations :
And, reversing the decree of the county court, dismissed the bill.
This decree was reversed the 16 day of may, 1792, by the court of appeals, whose opinion was, “ that the fact, 1 that the verdict in the suit at common law between the parties was founded in mistake of some of the jurors,’ being well established by the depositions was a good ground for a court of equity to decree another trial in the said suit.”
This last decree is acknowledged to be right if we may attend to four jurors, of whom, although three of them were more than 30 and the other 26 years of age, neither had before served in that office, and who having declared their disapprobation of the sentence in which they seemed to concur to have been so invincible that they would not have concured in it, if they had not been misled by some of their brethren into a belief that, in questions refered to juries the opinion of a majority was decisive. But to permit part of a jury to retract a verdict recognized in solemn form is thought by some a dangerous precedent.*

 In some cases, where the damages were said to be excessive, two or three judges, who heard the evidence, would have approved motions for new tritls; but the others would give no opinion, heeause they were not present at. the first trials: so that there were no courts who wuold hear the motions, in other eases, where verdicts have seemed exceptionable fur various reasons, prejudices against one of the parties have been so prevalent that from their influence even justices of thp peace have not been free, motions for new trials to courts composed of such judges must he vain, in cases like these interposition of the court of equity may he justified.

[See Ross v. Pleasants, Shore & Co., in this vol. note p. 10, and in 1 Wash. 158. The doctrines as to whether and to what extent jurors should be permitted to testify, by affidavit or in open court, against their verdicts, have been very recently a good deal discussed in the Federal Court, for this Circuit; in the Superior Court of Law fur Henrico County and in the General Court.— The questions are now pending in the Appellate Courts both of the Union and this Commonwealth. In this State, they are involved in the case of Nicholas *136 O. Thompson, found guilty in the second degree of the murder of his wife,— His motion fora new trial, based, in a great measure, upon the testimony of the jurors themselves, was overruled by the Superior Court. The General Court not having time, at its last session, owing to the unavoidable delay in presenting his petition, to decide the. questions aris ng thereon, awarde-d a writ of error, and will hear and determine them at their next term. Questions as to the separation of the jury, and their taking.something to drink, though only in moderation, are also involved in the case. — J2d.]